# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN LEE ERBY,

        Plaintiff,

        v.                                              Case No. 05-C-485

WISCONSIN RESOURCE CENTER,
SHERI FROMOLZ,
JILL PINKERTON,
SENAH LARSON,
NATLE, and
JENNIFER LEMINKS,

        Defendants.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. #34), DENYING AS MOOT PLAINTIFF'S MOTION TO PRODUCE (DOC. #52), AND DENYING AS MOOT PLAINTIFF'S MOTION TO APPOINT COUNSEL (DOC. #56)

Before the court is the defendants' motion to dismiss this case for failure to exhaust administrative remedies. In addition, the plaintiff has filed a motion to produce documents and a motion to appoint counsel. All of these motions will be addressed herein.

## BACKGROUND OF THE CASE

Plaintiff, John Lee Erby, a former Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 along with a motion fo leave to proceed *in forma pauperis*. On July 11, 2005, the court granted the plaintiff's motion for leave to proceed *in forma pauperis* on an Eighth Amendment claim based on his exposure to gas. According to the complaint, the plaintiff was an innocent bystander to the gas, was kept in his cell for thirty minutes following the exposure while other inmates were evacuated, and suffered injury as a result of the exposure.

On October 7, 2005, defendants Wisconsin Resource Center and Sheri Fromolz filed a motion to dismiss.[1] The plaintiff filed his response on November 29, 2005, and on December 12, 2005, the defendants filed a reply.

When ruling on a motion to dismiss, the court must focus on the pleadings. If "matters outside the pleadings are presented to and not excluded by the court" in connection with a motion to dismiss, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b).

In this case, the defendants have filed an affidavit in support of their motion. Therefore, the motion to dismiss is treated as a motion for summary judgment. *Id.* A district court cannot properly rule upon a motion for summary judgment without providing the opposing party a "reasonable opportunity" to contradict the material facts asserted by the movant. *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir. 1982). This means that a pro se prisoner, who is a plaintiff in a civil case, is entitled to receive notice of the consequences of failing to respond to a motion for summary judgment or to a motion to dismiss supported by affidavits. *Id.* In this case, counsel for the defendants have provided the plaintiff with the required notice. *See* Civil L.R. 56.1(a) (E.D. Wis.).

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] The remaining defendants, Jill Pinkerton, Senah Larson, Natle, and Jennifer LeMinks, have not been served. (*See* Order of Nov. 4, 2005, at 2.)

a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute of "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings . . ."). "Rule 56(c) *mandates* the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (emphasis added).

In evaluating a motion for summary judgment, courts draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

# FACTS[2]

The plaintiff states that on March 14, 2005, while sleeping on Unit 12 at the Wisconsin Resource Center, an inmate named "Out Law" was messing around near his room. (Compl. at 3.) The inmate was told by the prison staff to go back to his room but the inmate refused. *Id.* Consequently, the prison staff sprayed gas at the inmate and took the inmate away. *Id.* The plaintiff adds that the gas sprayed was so strong that prison staff had to remove everyone from the unit. *Id.* According to the plaintiff, the prison staff locked him in his room for "30 minutes with that strong gas burning . . . [in his] eyes . . . ." *Id.* Moreover, prison staff heard and saw the plaintiff knocking on his room door but that prison staff ". . . just kept on going. . . ." *Id.* The plaintiff is blind in one eye and has poor vision in the other eye. *Id.* Moreover, the condition of the plaintiff's good eye worsened and he is concerned that he may go blind if swelling does not go down. *Id.* at 4. Therefore, the plaintiff seeks damages and injunctive relief. *Id.* at 5-7.

It is the policy of the Wisconsin Department of Corrections (DOC) to afford inmates in adult correctional institutions a process by which grievances may be expeditiously raised, investigated, and decided. (Ray Aff. ¶ 3.) This process is commonly referred to as the Inmate Complaint Review System (ICRS). *Id.* The procedures related to the ICRS are set forth in the Wisconsin Administrative Code Chapter DOC 310. *Id.* The ICRS is available to all inmates incarcerated in DOC adult correctional institutions. (Ray Aff. ¶ 4.)

---

[2] Facts are taken from the complaint and from the affidavit of John Ray. John Ray has been employed by the Wisconsin Department of Corrections as a corrections complaint examiner since January 5, 1997. (Ray Aff. ¶ 1.)

4

In the course of John Ray's duties as a corrections complaint examiner, he receives appeals from inmates when they receive unfavorable decisions on their inmate complaints filed at an adult correctional institution under the ICRS. (Ray Aff. ¶ 5.) He investigates such appeals and makes recommendations to the Office of the DOC Secretary. *Id.* All offender complaints submitted under the ICRS and associated documents, such as receipts, reports, forms, and correspondence are stored and maintained on the Inmate Complaint Tracking System, which is a database to which Ray has access. (Ray Aff. ¶ 6.)

An inmate may use the ICRS to raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints in accordance with DOC Chapter 310. (Ray Aff. ¶ 7; Wis. Admin. Code § DOC 310.08(1).) Inmates must meet the filing requirements of the Wisconsin Administrative Code Chapter DOC 310 and if they do not, the institution's inmate complaint examiner has the authority to not process the complaint under the ICRS and return the complaint to the inmate. (Ray Aff. ¶ 8; Wis. Admin. Code §§ DOC 310.07(2)(b) and 310.09(1)(a) - (e).) Inmates must exhaust all administrative remedies that the DOC has promulgated by rule before they may commence a civil action or special proceeding against any officer, employee, or agent of the DOC in the officer's, employee's, or agent's official or individual capacity. (Ray Aff. ¶ 9; Wis. Admin. Code § DOC 310.05.)

To exhaust an inmate's administrative remedies under the ICRS, an inmate must file an offender complaint with the institution's inmate complaint examiner, receive a decision on the offender complaint, file an appeal to the corrections complaint examiner's office, and receive a final decision from the Secretary of the DOC. (Ray Aff. ¶ 10; Wis. Admin. Code § DOC 310.07.) The only exception relates to inmate complaints that are

5

rejected by the inmate complaint examiner, in which case an inmate must appeal all rejected complaints to the appropriate reviewing authority to exhaust administrative remedies. (Ray Aff. ¶ 11; Wis. Admin. Code § DOC 310.11(6).) The decision of the reviewing authority is the final decision for all rejected complaints. *Id.*

Decisions related to offender complaints under the ICRS are first determined by the institution's appropriate reviewing authority. (Ray Aff. ¶ 12.) That reviewing authority is the warden or the warden's designee. *Id.* Typically, the warden designates the deputy warden as the appropriate reviewing authority. *Id.* An inmate dissatisfied with a reviewing authority decision may within ten calendar days after the date of the decision, appeal that decision by filing a written request for review with the corrections complaint examiner's office on forms supplied for that purpose. (Ray Aff. ¶ 13; Wis. Admin. Code § DOC 310.13.)

In the course of performing his duties as corrections complaint examiner, Ray has access to the Corrections Integrated Program Information System (System). (Ray Aff. ¶ 14.) The System is kept in the normal course of business regularly conducted by the DOC. *Id.* One of the functions of the System is to show the location and movement of inmates within the DOC. *Id.* On September 16, 2005, Ray searched the information on the System related to the plaintiff. (Ray Aff. ¶ 15.) According to the System, the plaintiff began a period of incarceration as a DOC inmate in August 1997. *Id.* The plaintiff's most recent period of DOC incarceration began on December 6, 2001. *Id.* On December 22, 2004, the plaintiff was transferred to the Wisconsin Resource Center. *Id.*

Ray has read the complaint in this case, which alleges that on March 14, 2005, the plaintiff was exposed to "gas," which was used to control another inmate on the unit in the

vicinity of the plaintiff's room. (Ray Aff. ¶ 16.) The plaintiff alleged that he was exposed to this gas and suffered injury to his eye due to this exposure. *Id.*

On September 16, 2005, Ray searched the Inmate Complaint Tracking System for offender complaints submitted by the plaintiff under the ICRS, and generated an Inmate Complaint History Report (Report). (Ray Aff. ¶ 17, Ex. 1000.) All offender complaints submitted by the plaintiff that met the filing requirements under Wis. Admin. Code § DOC 310.09(1)(a) - (e) are listed on the Report. (Ray Aff. ¶ 18.) If the plaintiff submitted an offender complaint that did not meet the filing requirements under Wis. Admin. Code § DOC 310.09(1)(a) - (e), the institution's inmate complaint examiner has the authority to return the offender complaint to the inmate for error correction and re-submission by the inmate. *Id.*

The Report dated September 16, 2005, revealed to Ray as follows: the plaintiff submitted eleven offender complaints under the ICRS, between the dates of February 28, 2003 and August 30, 2005. (Ray Aff. ¶ 19.) The plaintiff did not file any offender complaints that met the filing requirements of Wis. Admin. Code § DOC 310.09(1)(a) - (e) during March 2005. *Id.* None of the offender complaints filed by the plaintiff related to medical issues or grievances. *Id.*

Based upon Ray's search of the System regarding offender complaints submitted by the plaintiff, it does not appear that the plaintiff exhausted his administrative remedies related to an alleged eye injury that occurred on March 14, 2005, due to exposure to "gas." (Ray Aff. ¶ 20.)

**ANALYSIS**

Defendants contend that this case should be dismissed because plaintiff failed to exhaust administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA exhaustion requirement dictates "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require").

The ICRS within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the DOC has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to "raise significant issues regarding rules, living conditions, staff actions

8

affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

To use the ICRS, an inmate must file a complaint with the inmate complaint examiner within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than fourteen days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the inmate complaint examiner either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within ten days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within ten days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner. Wis. Admin. Code § DOC 310.13(1). The corrections complaint examiner reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code § DOC 310.13(6). The Secretary may accept, adopt, or reject the corrections complaint examiner's recommendation, or return the appeal to the correctional complaint examiner for further investigation. Wis. Admin. Code § DOC 310.14(2).

In response to the defendants' motion, the plaintiff states, "I did so file an ICE and he had gotn it all so but he sint it back [sic]." (Pl.'s Resp. at 2.) Attached to the plaintiff's response is an offender complaint dated November 9, 2005, complaining about denial of a legal loan. However, this offender complaint, because of its date and its subject matter, appears to be unrelated to the March 2005 incident. The plaintiff's response also mentions

an offender complaint that he filed that was apparently rejected because it included bad or obscene language. It unclear what offender complaint the plaintiff is referring to. He states that this offender complaint should not have been rejected. The plaintiff goes on to say, "knowing that I could not come out of that room to put in nother [sic] one without staff and when I did so I had to ask staff for some more ICE forms they told me that there wasn't anymore and that they did not have time to find any and that I would have to wait for some appeals forms waich [sic] never came. [T]hen they made up a lie to send me to lock up w[h]ere I couldn't get any more froms [sic]." *Id.*

The plaintiff's response is confusing. Moreover, it does not include any facts that would be admissible in evidence; he files no affidavit and nothing in the response is sworn. *See* Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). The plaintiff's unsworn statement that he "did so" file an "ICE" is insufficient proof in opposition to a motion for summary judgment. *See Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002) (citing *Patterson v. Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)) ("It is well-settled that conclusory allegations . . . without support in the record, do not create a triable issue of fact"). Moreover, while prisoners are not required to exhaust administrative that are not "available," *see Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004), the plaintiff's assertion that he requested another ICE form and that he never received an appeal form fail to provide the court with sufficient detail to withstand summary judgment.

According to the Federal Rules of Civil Procedure:

10

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The undisputed facts demonstrate that the plaintiff did not exhaust his administrative remedies with regard to the March 2005 incident. Accordingly, the defendants' motion to dismiss will be granted.

Now, therefore,

**IT IS ORDERED** that the defendants' motion to dismiss (Doc. #34) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

**IT IS FURTHER ORDERED** that the plaintiff's motion to produce (Doc. #52) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Doc. #56) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U.S. District Judge